IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | CIVIL ACTION NO. ) ) **COMPLAINT** ) |
| FEDERAL EXPRESS CORPORATION, d/b/a FEDEX EXPRESS, | ) JURY TRIAL DEMANDED ) ) ) |
| Defendant. | ) |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Ilyse Johnson ("Charging Party") and similarly aggrieved disabled employees working in dispatch operations who were affected by such unlawful employment practices. As alleged with greater particularity below, the U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant Federal Express Corporation d/b/a "FedEx Express" ("FedEx") failed to reasonably accommodate Charging Party and a class of similarly aggrieved disabled dispatchers based in New Jersey and New York City who requested telework as a reasonable accommodation for their disabilities.

JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§

2000e-5(f)(1) and (3); and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission" or "EEOC"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) & (3).

4. At all relevant times, FedEx has continuously been and is now doing business in New York state and New York City and has continuously had at least fifteen (15) employees.

5. At all relevant times, FedEx has continuously been an employer in an industry affecting commerce under Section 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

6. At all relevant times, FedEx has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Charging Party filed a charge of discrimination with the Commission alleging violations of the ADA by FedEx.

8. The Commission investigated Charging Party's charge of discrimination.

9. On June 17, 2024, the Commission issued a Letter of Determination to FedEx finding reasonable cause to believe that FedEx violated the ADA by failing to reasonably accommodate Charging Party and a class of similarly aggrieved employees requesting telework as

a reasonable accommodation for their disabilities and invited FedEx to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with FedEx to provide it the opportunity to remedy the discriminatory practices alleged in the Letter of Determination.

11. On August 29, 2024, the Commission issued to FedEx a Notice of Failure of Conciliation advising FedEx that the Commission was unable to secure from FedEx a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

13. FedEx is the world's largest express transportation company and a leading North American provider of small-package ground delivery services providing transportation, e-commerce, and business services across its global network.

14. Dispatchers are the FedEx employees responsible for planning and executing courier route assignments based on workforce availability, scheduling parameters and service area changes and conditions, and for coordinating pick-up and delivery coverage.

15. Dispatchers perform their work electronically using a computer and, when working in an office location, are generally situated in clusters of cubicles separated from one another.

16. FedEx monitors dispatcher attendance and productivity with "Dispatcher Work Station" ("DWS"), which tracks all of a dispatcher's day-to-day functions.

17. The dispatcher position requires an "ability to work in a constant state of alertness and in a safe manner."

18. Unlike the roles of courier and customer service agent at FedEx, the dispatcher role is predominantly sedentary.

19. On March 15, 2020, FedEx's management informed its Somerset, New Jersey employees that it was closing the Somerset Office and relocating dispatch operations to its New York City office ("New York City Office") located at 130 Leroy Street in Manhattan.

20. Charging Party, a New Jersey resident, successfully worked as a dispatcher in FedEx's Somerset, New Jersey location ("Somerset Office") for approximately 30 years.

21. Charging Party has medical conditions, including Type II diabetes, asthma, hypertension, chronic kidney disease and diabetic neuropathy that, among other limitations, substantially limit the functioning of her endocrine system and her mobility and ability to walk.

22. FedEx's Somerset Office was a twenty-minute drive from Charging Party's home with parking available within a few feet from the office.

23. FedEx offered to transfer New Jersey-based dispatchers to courier and customer service agent positions, but these positions required significantly different duties including, but not limited to, the need for frequent mobility and ambulation.

24. Because her dispatch job was relocated to FedEx's New York City Office, Charging Party would have been required to travel approximately 40 miles and navigate several train rides with lengthy periods of walking, which would not have been manageable given Charging Party's limitations with balance, mobility, and walking.

25. In or around April 2020, in response to the COVID-19 pandemic, FedEx permitted all of its dispatchers, including Charging Party, to telework on a full-time basis.

26. As of August 26, 2021, FedEx required dispatchers who sought to continue to telework as an accommodation for a disability to submit an accommodation request form and to provide medical documentation in support of their accommodation requests.

27. Employees requesting an accommodation were required to submit an accommodation request form, along with supporting medical documentation, to their assigned Human Capital Management Program ("HCMP") Advisors.

28. FedEx's disability accommodations policy, "5-35 Disabled Individuals," states that "[r]equests for accommodation are reviewed on an individual basis by the local and/or Corporate Human Capital Management Committee (CHCMC)," and that "[m]anagers are not responsible for determining if an individual has a covered disability or whether a request for accommodation is reasonable."

29. After receiving an accommodation request form and supporting medical documentation, an HCMP advisor submits all documents to the Committee for review.

30. In accordance with FedEx's accommodation policy, Charging Party and other disabled dispatchers submitted accommodation request forms and provided medical documentation to support their requests to continue to telework.

31. Those requests then went to a Committee for review and approval or denial.

32. FedEx, through its Committee, granted Charging Party's request to continue to telework on a full-time basis as an accommodation for her disabilities.

33. The Committee also granted the telework accommodation requests of other New York City-based dispatchers at this time.

34. Charging Party successfully performed the dispatcher role while teleworking on a full-time basis from April 2020 through February 2023.

35. Non-disabled FedEx employees in the New York City location complained that some dispatchers were permitted to work from home.

36. In February 2023, FedEx's Dispatch Managers, Roberto Villalba and Ricardo Murata, requested that the Committee review the telework accommodations for Charging Party and other disabled dispatchers based out of the New York City office. Their stated reasons for the request were because of the significant decrease in COVID-19 cases and because Villalba and Murata needed their dispatchers back in the office to support the operation.

37. On February 15, 2023, Charging Party was notified by e-mail that her managers requested that the Committee re-evaluate her telework accommodation due to the decrease in COVID-19 cases.

38. That same day, Charging Party questioned the reason for re-evaluating her accommodation due to the decrease in COVID-19 cases and clarified that her request to telework as an accommodation was not based on COVID-19, but rather based on her disability and resulting medical conditions, such as clogs in her leg arteries, which made walking extremely difficult and painful.

39. On February 17, 2023, Charging Party provided two doctors' notes via email that described her diabetes and diabetic neuropathy, which causes problems with her balance and strength in both legs.

40. Charging Party requested to continue to telework as an accommodation for her disability and related medical conditions, noting that it cost FedEx nothing and allowed her to step in to assist dispatch operations several times when other dispatchers were late or called out sick, including on Christmas Eve.

41. On February 28, 2023, the Committee met via conference call to discuss the re-evaluation of telework accommodations granted to New York City-based disabled dispatchers, including Charging Party.

42. In re-evaluating these accommodations, the Committee did not speak with Dispatch Managers Villalba or Murata.

43. In re-evaluating these accommodations, the Committee did not speak with Charging Party or other disabled dispatchers who had previously been granted telework as an accommodation.

44. In re-evaluating these accommodations, the Committee did not conduct any further assessment of the operational need or costs associated with telework accommodations granted to New York City-based disabled dispatchers.

45. In re-evaluating these accommodations, the Committee did not discuss or consider alternative accommodations that could have been effective for Charging Party or other disabled dispatchers.

46. On February 28, 2023, the Committee denied continued telework accommodations for New York City-based disabled dispatchers, including Charging Party, because, "[p]er [d]ispatch management, there is an operational need for dispatchers to work at the office to interact with other team members and step in to assist on a frequent basis."

47. Charging Party did not have productivity or attendance problems.

48. Charging Party regularly worked with other dispatchers, including Team Members, using Microsoft Teams or other electronic means, even when she physically worked in FedEx's Somerset location.

49. At all relevant times, FedEx described Charging Party as a "team player," who completed assigned tasks in a timely and dependable manner, and as a self-starter who required little or no supervision.

50. After FedEx denied the continuation of telework accommodations, Dispatch Management ordered Charging Party and other disabled dispatchers who had telework accommodations to physically appear for work in FedEx's New York City Office location on Leroy Street.

51. In-office presence is not an essential function of the dispatcher position at FedEx.

52. Because Charging Party required an accommodation to continue to successfully perform the essential functions of her dispatcher position, and because her disabilities precluded her from walking the distances required to physically work in the New York City location, Charging Party was forced to retire on July 31, 2023 after exhausting her benefits.

53. As a result of Defendant's actions, Charging Party and similarly aggrieved dispatchers suffered damages.

## STATEMENT OF CLAIMS

54. Charging Party and similarly aggrieved dispatchers who sought continued telework as an accommodation are disabled within the meaning of the ADA, 42 U.S.C. § 12102.

55. At all relevant times, Charging Party and similarly aggrieved dispatchers who teleworked as an accommodation were qualified to perform the essential functions of the dispatcher position with or without a reasonable accommodation.

56. Defendant FedEx engaged in unlawful employment practices in violation of Sections 102(a) & (b)(5) of Title I of the ADA, 42 U.S.C. §§ 12112(a) & (b)(5)(a), when it failed to accommodate Charging Party and similarly aggrieved dispatchers.

57. The failure to accommodate Charging Party and similarly aggrieved dispatchers resulted in loss of wages and earnings, deprived them of equal employment opportunities, and otherwise adversely affected their status as employees because of their disabilities.

58. The unlawful employment practices complained of above were intentional.

59. The unlawful employment practices complained of above were done with malice or reckless indifference to Charging Party's and other similarly aggrieved employees' rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination, and from engaging in any employment practice that discriminates on the basis of disability;

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices;

C. Order Defendant to make Charging Party and other similarly aggrieved employees whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including instatement or reinstatement;

D. Order Defendant to make Charging Party and other similarly aggrieved employees whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E.	Order Defendant to make Charging Party and other similarly aggrieved employees whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial;

F.	Order Defendant to pay Charging Party and other similarly aggrieved employees punitive damages for the malicious and/or reckless indifference described above, in amounts to be determined at trial;

G.	Grant such further relief as the Court deems necessary and proper to the public interest; and

H.	Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Dated: January 16, 2025

    KARLA GILBRIDE
    General Counsel

    CHRISTOPHER LAGE
    Deputy General Counsel

    GWENDOLYN REAMS
    Associate General Counsel

    U.S. EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION
    131 M Street, N.E.
    Washington D.C. 20507

*/s/ Kimberly A. Cruz*
KIMBERLY A. CRUZ
Regional Attorney

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004-2112
(929) 506-5345 (telephone)
(212) 336-3623 (fax)
Kimberly.cruz@eeoc.gov


*/s/ Andres F. Puerta*
ANDRES F. PUERTA
Trial Attorney

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Newark Area Office
Two Gateway Center, 17th Floor
Newark, NJ 070102
(929) 506-5278 (telephone)
(973) 645-4524 (fax)
Andres.puerta@eeoc.gov